Good morning. Helen Kong from the Imbremtlaw Injustice Clinic, representing Petitioner Our Children's Earth Foundation. I'll reserve three minutes for rebuttal. We're here to ask this Court to vacate EPA's suspension of Clean Air Act Section 172 requirements. Those requirements result in pollution reduction to get you to attainment and to stay there until you can replace them with a plan showing that you can remain in attainment for 10 years. Because of the suspension, the Bay Area is allowed to have 26 tons per day more pollution. The Court should vacate EPA's suspension for two reasons. First, EPA's determination that Bay Areas attain the ozone standard, the basis for the suspension, violated Section 181's mandate that attainment determinations be made using design values with a nonattainment cutoff of .121 and not to be rounded down to two digits. And second, even if we're wrong about that, this Court should still vacate the suspension because the Clean Air Act did not give EPA any authority to suspend nonattainment area requirements and nonattainment area requirements like 172 cannot be suspended upon an attainment determination. Sections 107D3E and 175A are explicit that an attainment determination by itself is not a guarantee of lasting attainment. I will quickly address EPA's claim of mootness. As EPA agrees, this case is not moot. The issue before this Court is whether the suspension was illegal. And if indeed it is illegal, as we argue, we have a remedy, which is the vacation of the suspension. And once that suspension is vacated, EPA can then determine what the Bay Area must do. Let me just understand one point with respect to the new eight-hour rules. It's my understanding that the one-hour rule still remains in effect for the Bay Area, but that there's a challenge in the D.C. Circuit as to whether there can be a suspension of certain items under the eight-hour rule. That's correct. There is a challenge in the D.C. Circuit, which is the court with the exclusive jurisdiction, to hear challenges to rules like that. And the challenge to the eight-hour rule is as to the revocation that rules purported revocation of the one-hour rule. And the one-hour rule, as it stands, the EPA's rules say, the eight-hour rule says, that it will be revoked as of June of this year, 15th, in two days. So the question is, why are we still here? And the reason we're still here is that the statutory requirements of 172 would be applicable but for the suspension. And therefore, the suspension issue must be decided. Let's say that there is no D.C. Circuit challenge, and the eight-hour rule and whatever these anti-backsliding provisions are in effect. So there is no D.C. Circuit problem. Would this case be moot? No, Your Honor, because even then, EPA's own rules say that the attainment demonstration and reasonable further progress requirement, which is the annual incremental reductions requirement, still remain. The eight-hour rule looks to the obligations set forth by the one-hour rule to ‑‑ it looks to it to see what these areas that are in nonattainment for both the one-hour and the eight-hour must do. Okay. So let me just ‑‑ because it's probably quite clear to all of you having been in it for quite a while. But if the eight-hour rule is retained and is a legitimate rule, does that mean we wouldn't need to determine the first part of your challenge about the rounding? Or does that still remain in effect under EPA's own rules? If the rule were final, the eight-hour rule were final and there were no challenges to it, even then the first part of the case remains alive. And the reason is the suspension determination was based on the attainment determination. Okay. So if we win on that, the suspension is still illegal. And if we win on the part where we say 175A requires EPA not to suspend Section 172 requirements, we win. So we win either way. If we win the first part on the attainment determination that EPA shouldn't have rounded, the suspension shouldn't have occurred, and the Bay Area would still have to do its attainment demonstration and its reasonable further progress commitment in the 26 tons. So now let's make another scenario. What if we were to determine that deference to the EPA permitted the rounding, and however we might construe these statutes? So you would lose on Part 1 of your appeal. You argue then that you still shouldn't be able to do these suspensions under the old rules. How would then the eight-hour rule factor into the second part of your challenge on the suspension? Okay. Let me first revisit your statement that if you found that you could defer to the rounding, then we would go to the suspension issue. If you were to say that you would defer to EPA, there are still arguments that would save us, which is that EPA should not have interpreted Section 181 impermissibly. Chevron second step is that ‑‑ I understand those arguments, so I'm not trying to undercut your arguments. I'm just saying let's just say on all of that first part, the attainment. I should have been probably more precise. The attainment determination, let's just say you lost on that hypothetically. Then explain to us what that does to the second part of your challenge in light of the new eight-hour rules. Right. So the suspension argument is that the suspension is illegal because of Section 175A and 107D3E. So if there hadn't been a suspension, we would still have impacts today. If there weren't a suspension, Bay Area would still have to do an attainment demonstration under 40 CFR 50.905A, and it would still have to do a reasonable further progress demonstration under the same section, under the eight-hour rule. So Bay Area, the consequences today that we're suffering, even if you have the eight-hour rule, is that the Bay Area is not required to do what it should have done. And because the eight-hour rule looks to the one-hour rule for what obligations areas like the Bay Area has that are both in nonattainment for one hour and eight hour, we must decide the suspension issue to see what the Bay Area's next step should be. Okay. Just make sure I can unravel that and understand what you said. Basically, you're just saying these suspension issues, whether they should have let the Bay Area out of these three particular requirements, that would still need to be decided even if the eight-hour rule is valid. That's correct. Because the eight-hour rule incorporates the one-hour requirements. Is that right? That's correct. Okay. And the reason the eight-hour rule does that is very important. It does that because the eight-hour rule believes that the one-hour rule, everything you have to do to get to the attainment for one hour, contributes to the attainment of the eight-hour standard. So let's say the D.C. Circuit determined that the eight-hour rule were invalid, it wouldn't really matter to the attainment issue, you're saying? It wouldn't matter to the suspension issue. Suspension issue. And the only issue that might have some impact on is the contingency measure issue. That's the issue that EPA mentions in its 28J letter. But that issue is not right yet before this Court, because once the Court gives us the remedy we ask for, which is the vacation of the suspension, EPA then has to go decide what to do about that and what to order Bay Area to do. That was my question. What you want is for this to go back to the EPA for it to decide what to do. That's correct. EPA must decide, once the Court decides the suspension in our favor, EPA must decide whether to order Bay Area to do the various three requirements that we talk about in this proceeding. And if it decides, in light of the eight-hour rule, not to order contingency measures, that's another decision for another Court. So let me now address EPA's decision that the Bay Area's 0.123 design value can be rounded down to 0.12 and therefore the Bay Area has attained the standard. EPA's attainment determination was illegal because EPA violated Section 181, which tells us three things. First, Section 181, Table 1, tells us that nonattainment starts at the design value of 0.121. And that's why the Supreme Court recognized that in American Trucking that Table 1 codifies the one-hour standard, and the D.C. Circuit Court in API recognized that all areas or every area with a design value above 0.120 is in nonattainment. Second, and this point is very important, and this is in EPA's statutory addendum at 30, 181B2A says that for ozone nonattainment areas, EPA shall determine, based on the area's design value, whether the area attained the standard. And this was recognized in EPA's proposed rulemaking in the record at Volume 1, 250. Third, 181 tells us that the design value is calculated using the Laxton Memorandum, not some 1979 rounding guidelines. For ozone, the Laxton Memorandum directs the use of three digits without rounding. And notably, the Laxton Memorandum explicitly allows rounding for carbon monoxide, but does not refer to rounding at all for ozone, and that's in the record at 88. So the statute directly speaks to attainment determinations using 0.121 as the cutoff, and EPA should not have rounded down to determine attainment. Moreover, even if not mandated, the Court should still find that EPA's rounding, which results in a nonattainment cutoff of 0.125, is an impermissible interpretation of Section 181, first, because of Section 181 itself, and second, because the standard itself at 40 CFR 50.9 uses the terms, quote, above 0.12 PPM to judge compliance with the standard. And certainly, 0.123 is above 0.12. Out of curiosity, where are the measurements made? In 24 monitoring stations all through the Bay Area, and the measurements that are at issue in this case occurred at Livermore. That's at 258 in the record. And so the Bay Area is really a rather large place. Yes, and it includes certain parts of Napa as well. Fourth, or I think I skipped the third part. The 1979 rounding down policy was not a subject of notice and comment rulemaking. And fourth, EPA has not consistently used 0.125. And, of course, as this Court has recognized in the past, when agencies do not use their own rules consistently, it's owed no deference. So in particular, in the critical ozone rulemaking right after the 1990 amendments, EPA used 0.121. And that's in our brief reply at 9 and 10. Now, moving to the illegality of the suspension, assuming EPA was correct in its attainment determination, the Court should still vacate the suspension. And the critical question here is, why does the Bay Area need to comply with Section 172 requirements and still make reductions if the Bay Area has attained? Well, that's because attaining doesn't mean that you've gotten there through real reductions that guarantee that you will stay there during worst weather conditions. Attainment demonstrations are required to use worst weather conditions, and that's at Appendix W, 9.3.1.1. And because it's the reductions that guarantee real attainment, that's why the suspension was illegal. Those reductions were demonstrated to be necessary for real attainment, and an attainment determination without more does nothing to change that assessment. Being in attainment is not equivalent to being an attainment area. The statute is explicit that having three years of clean data is insufficient to jettison Section 172's get there and stay there requirements that Congress mandated for areas that cannot show just yet that it will remain or they will remain in attainment for at least ten years. That's the maintenance plan attainment areas must have under Section 175A. And two, that they've kicked the nonattainment problem with real reductions on the books. That's the permanent and enforceable reductions requirement of Section 107D3E. The statute does not say that upon attaining clean data for three years, nonattainment requirements like Section 172 requirements can be suspended. There's no statutory authority for that. I guess the question I have there really goes to Chevron deference. Your argument makes, you know, common sense that they're having gotten attainment, they're not really in sustained attainment, so to speak. But then the EPA comes back and through for each of these three suspension items, clicks off why those particular things are not required in their view. Why wouldn't we defer to the agency on that point? Because of the combination of 175A and 107D3E. 175A is explicit, as I said, that you cannot waive or suspend these requirements upon just attaining. It says that before you can waive them and substitute them with a maintenance plan showing attainment for ten years and then ten plus more years, you have to find that the area has attained it because of permanent and enforceable reductions. And what EPA is saying basically is that if you look at the statutory language for that, somehow those requirements like reasonable further progress and attainment demonstrations are not tied to attainment. That's what they say, tied to attainment. But look at the statutory language. If you look at 175, it says that until the redesignation is final, Part D requirements, that is, nonattainment area requirements, including Section 170 requirements, remain in force and effect. And Part D does not say nonattainment area without an attainment determination. Part D is for all nonattainment areas. What is being confused here is the equating of nonattainment areas or equating of attainment areas with areas with an attainment finding or an attainment determination. Congress knew that those were two distinct areas, and that's why in 175A Congress said even if you have an attainment determination or an attainment finding, you have to make sure that all of the reductions that you made serve you through the worst weather conditions and economic conditions. Counsel, if you want to reserve some time for rebuttal, you have two minutes left. Thank you. Good morning, Your Honors. Eric Hostetler for Respondent Environmental Protection Agency. With me at counsel's table are Sarah Schneeberg from EPA's Office of General Counsel and Jan Taradas from EPA's Office of Regional Counsel. Are you the only attorney presenting argument? Yes, Your Honor. There are three basic points I'd like to make in my time this morning. First, EPA did correctly determine based on three years of monitoring data that the San Francisco Bay Area is in attainment with the one-hour ozone standard. Second, based on the fact that the Bay Area is in attainment with the one-hour ozone standard, EPA reasonably suspended three Section 172 State Implementation Plan requirements, which by their own terms apply to areas that are not attaining the standard, that are not in attainment. Third, I wanted to discuss the mootness implications arising from the fact that EPA has promulgated a new ozone standard and is phasing out the one-hour ozone standard. Essentially, as I'll discuss, one of the three Section 172 issues will be moot as of this Wednesday. Let's start there so we know what the shape of the table is. Sure. Moot's a great word. I like that. Make our life easy. All of the issues Petitioner raises relate to the one-hour ozone standard. EPA has promulgated a more stringent ozone standard known as the eight-hour ozone standard. Last spring, in the spring of 2004, EPA promulgated an implementation rule that governs how the eight-hour standard will be phased in and how the one-hour standard will be phased out. As part of that implementation rule, EPA said that the one-hour rule will no longer be effective in the Bay Area as of this Wednesday, June 15th. That would mean that the entire case would be moot, but for the fact that there are anti-backsliding requirements in the implementation rule, and the anti-backsliding requirements, in relevant part, say that to the extent you had in your SIP attainment demonstration requirement and the reasonable further progress requirement in your one-hour SIP, those will remain requirements of your eight-hour plan. However, the Section 172C9 contingency measures provision does not apply no matter what after revocation of the one-hour ozone standard. This means that the issues petitioners raises with respect to that one provision, the Section 172C9 provision, are now moot, because no matter what this Court were to say about that provision, its opinion would be advisory. After this Wednesday, the Bay Area will not be required, no matter what the outcome of this case, to submit 172C9 contingency measures. They are not part of the eight-hour rule anti-backsliding requirements, and the one-hour standard has otherwise been revoked. But the one-hour standard, as to whether there's attainment under the one-hour standard, that remains a live issue, correct? It remains a live issue because if the Court concluded EPA erred in the spring of 2004, in making its attainment determination, then the reasonable further progress in attainment demonstration requirements would remain applicable eight-hour implementation rule anti-backsliding requirements. Does that make sense? Yes. Okay. I'll go ahead and move on to the merits. In the first place, EPA did correctly and properly determine that the Bay Area is monitoring attainment with the one-hour ozone standard. The one-hour ozone standard is set forth at 40 CFR 50.9. It is a two-digit standard. It is .12 parts per million. It is not a three-digit standard, and a standard is met if an area averages no more than one exceedance per year over a three-year period. Now, because air quality monitors do commonly express results in three or more digits, it's necessary to apply some sort of rounding convention to determine whether a particular monitor reading is in attainment with the two-digit standard. And the rounding convention to be used for this purpose is clearly set forth in EPA guidance issued contemporaneously with the standard in 1979 and which can be found at page four of our supplemental record excerpts. What do you do about the Supreme Court's statement in Whitman that suggests that the one-hour ozone standard is codified in the new table, which uses the three-digit? The Supreme Court did not address the issue at bar. I think the words they used is that that table is an approximation of the standard. They didn't say that that table is the standard itself. And as I'll explain, that table really has no applicability to an attainment determination. Under the 1979 rounding convention, a monitor reading from 0.121 to 0.124 is rounded down to 0.12 and meets the standard. A reading from 0.125 to 0.129 is rounded up to 0.13 and does not meet the standard. And let me emphasize that the 1979 guidance is expressly referenced in the regulations themselves at 40 CFR Appendix H as providing applicable guidance on how to measure compliance with the standard. So basically the rounding convention has always been, from the time the standard was promulgated in 1979, part and parcel of the standard itself. And I would add Petitioner's Council said that this rounding convention has not been consistently applied. It has been. It's been consistently applied for 26 years, and there's nothing in the record that reflects it has not been consistently applied. By way of further explanation with respect to what the record in this case reflects, there are 24 air quality monitors within the Bay Area, and none of those 24 monitors averaged more than one exceedance per year over the three-year 2001 to 2003 period. And Petitioner basically concedes that 23 of the 24 monitors reflected attainment. They're taking issue with one reading on one day over that three-year period from the 24th monitor, which was a reading of 0.123. For the reasons I've explained, EPA appropriately and properly rounded that reading to 0.12, consistent with its guidance. Now, Petitioner's citation to Table 1 and Section 181 of Subpart 2 is a complete red herring here. The fact is that when Congress added Subpart 2, it did not modify in any respect either the one-hour ozone standard at 40 CFR 50.9 or EPA's use of a rounding convention to measure compliance with that standard. Basically, what Congress was doing in the 1990 amendments is creating a new and improved statutory scheme for bringing ozone non-attainment areas into attainment. What happens to this table under the eight-hour rule? Well, that gets into a very complicated area of implementation of the eight-hour rule, but the Supreme Court did address that in the American Trucking case and basically said that the EPA couldn't ignore that table, even though the eight-hour standard is a totally different number, but had to figure out a way to, as it made sense, incorporate that table. But that's an issue that is under review in the D.C. Circuit. The concept of the design value that appears in that table is used to measure the relative severity of an air quality problem in an area that's already been determined to not be in attainment. But the classification scheme in that table is not used to determine whether an area is in attainment in the first place. Let me stress this. The concept of a design value is not part of the standard itself. It's computed differently. It's used for a different statutory purpose. So basically it's mixing apples and oranges to talk about design values in the context of an attainment determination. And doing so directs attention away from what is really a very straightforward regulatory standard that EPA properly applied here. And I should add that with respect to the Bay Area and the one-hour ozone standard, Subpart 2, Section 181 does not even apply at this point because the Bay Area is not classified under Subpart 2. It's only a Subpart 1 area at this point. So the table has no application for that reason. Let's say that you are correct and that this rounding was permissible and the attainment determination stands. Then you move to your suspension arguments. Correct. And you're saying that the contingency would be suspended by the new 8-hour rule, but not the other two aspects? Exactly. The contingency measures provision will be moot as of this Wednesday because it's not among the anti-backsliding requirements. Turning to that suspension issue, EPA did reasonably suspend the three Section 172 requirements at issue here because by their own terms they apply to areas that are not monitoring attainment with the standard. The purpose of these provisions is to compel regions that aren't monitoring attainment to adopt control measures to come into attainment. Well, here the Bay Area is in attainment. And it is important in looking at these provisions to look at their actual language. We agree with that. And to look at the context of the language. Well, you know, as I understand the children's argument is that, you know, obviously there's sort of a razor-thin aspect to attainment here in terms of the way this is determined. But an attainment under the standard doesn't really guarantee a longer longevity of the attainment because of the difference between the attainment designation and the finding of attainment. And so my understanding is that these requirements are hopefully to get you to an attainment designation ultimately. Is that correct? That's correct. So if you have just a finding of attainment, but you suspend these requirements, aren't you in effect undermining the whole scheme where you're trying to get to an actual attainment designation? Not at all, Your Honor. Nothing in the suspension action that is challenged here relieved the need for an area to submit a maintenance plan to ensure long-term maintenance of the standard at the time it submitted its redesignation request pursuant to Section 175A. There are different provisions of the Act that are geared towards long-term maintenance. That's the maintenance plan. And suspending these particular requirements doesn't relieve the need for an area to submit a maintenance plan along with its redesignation request. That maintenance plan, among other things, has to ensure long-term maintenance of the standard, that it will be maintained over at least ten years. It also has to include contingency provisions to ensure that if there is a future violation of the standard, that it's promptly corrected. So maintenance still is a part of the statutory scheme here. Turning back to the language of the provisions at issue, first there's a Section 172C1 attainment demonstration requirement. That requirement provides simply that state implementation plans shall provide for attainment of the NACs. Well, where an area is already in attainment, almost by definition the requirement has no meaning, no purpose. Once you've already attained, you don't need to demonstrate how you're going to attain. Turning next to the Section 172 reasonable further pro- I have a problem. It's fairly easy, from what I gather, to fall out of attainment. Is that correct? I wouldn't say it's fairly easy. Well, let's assume, just for fun, that one of the monitoring stations is right by the Bay Bridge, and let's assume that four days in a row you have a high ozone count, well above the permissible levels. There's no way you're going to get into attainment on a three-year average. Okay? You're out. Is that correct? You're correct, that if you could fall out of- At that point, what does the EPA do? At that point, EPA would reinstate these suspended provisions and require you to adopt additional emission control measures to come back into attainment. All right. I should note, well, this does go beyond the record, but- You probably shouldn't note it. The Regents has been in attainment for the last year and a half. But moving on to the Section 172C2 reasonable further progress requirement, reasonable further progress is defined as such annual incremental emission reductions as are required for the purpose of ensuring attainment. So by definition, reasonable further progress means annual incremental reductions that are needed to come into attainment. Well, if you're in attainment, you don't need additional incremental emission reductions to come into attainment by definition. How many attainment areas are there in California? I'm not sure, Your Honor. Turning next to the Section 172C9 contingency measures provision, that provision is also expressly linked to whether an area is monitoring attainment or not. Section 172C9 provides that contingency measures are measures to be undertaken if an area fails to attain the NAAQS. Well, if an area has already attained the NAAQS, by definition, it doesn't need to rely on contingency measures to come into attainment. It's in attainment. Let me note there are a host of other Section 172 requirements that are still applicable that the language is not tied to an area's attainment status. But if we were, however this might come out, if we were to say, well, in any event, we don't have to rule on contingency because it's moot in two days, but then the challenge in the D.C. Circuit is successful, that you can't suspend various of these requirements, what would happen? Well, I think, Your Honor, that in that what I would say to be a very speculative scenario, a petitioner could have a remedy potentially, could petition the agency to change its mind. And if that petition were rejected, then they could challenge that action. But in any event, this Court's jurisdiction has to be premised on the facts before it at this particular point in time. It can't be rest on speculative future administrative and judicial developments. It might rest on it, but the question would be whether we would have to suspend some portion or suspend our determination on this action pending the D.C. Circuit on that point. Again, I don't think you'd have to because I think that petitioner could effectively create a judicial remedy by petitioning the agency on this issue, and then if that petition were denied administratively, they could challenge that action. But it is probably within the Court's authority to suspend it. And they would be challenging that action then under the old one-hour rules. We wouldn't be there if the D.C. Circuit says everything's fine. But if the D.C. Circuit says everything's not fine, then their challenge is back under the old rules? I'm having trouble processing that, but the statute is the new regulation is permissible, and the suspension, well, if the D.C. Circuit said the suspension is not permissible under the new eight-hour rule, would the challenge then be to suspend under the one-hour rule that the contingency plan was not appropriate? No. I think it would be a challenge to the eight-hour rule because that would be the only thing left standing. There would be no one-hour rule. There's just going to be an eight-hour rule. Let me add that if you're speculating about, you know, future judicial developments, it's also entirely possible there are industry petitions challenging that rule, that the court could say that those anti-backsliding requirements in their entirety are impermissible, which would moot this entire case. So you really can't premise jurisdiction on speculation. Well, we're not premising our jurisdiction. We're trying to determine what's a live issue and what's not a live issue. What's the status of that litigation? It hasn't been briefed yet. It was stayed pending administrative petitions for reconsideration. Let me just also briefly comment on the full force and effect language in Section 175A, which Petitioner relies upon. That language basically does nothing more than clarify that when you have a redesignation request pending, you still have to comply with applicable SIP requirements while your redesignation request is pending. The full force and effect language doesn't tell you what vitality any particular requirements may have once you're monitoring attainment. And the central point we're making here is that in this case, these provisions by their own terms don't have any vitality when you're monitoring attainment. I mean, essentially to say these provisions shall have full force and effect is to beg the question of what force and effect they have when you're monitoring attainment. We submit they don't have any. In short, Your Honor, to the extent the case is not moot, we believe EPA's actions should be upheld in their entirety. EPA properly determined that the Bay Area is in attainment with the one-hour ozone standard, and EPA reasonably suspended three planning requirements that, by their own terms, do not apply to areas that are attaining the standard. In this regard, this is not a case of first impression. The Tenth Circuit has previously upheld EPA's interpretations in this regard, and for the same reasons this Court should affirm. Thank you, Your Honor.  Thank you. Thank you. Very quickly, in the American Trucking Decision, the Supreme Court did say the one-hour standard is the approximation of the standard is codified by Table 1. It was necessary to the Court's decision that all nonattainment areas are funneled into Table 1 for classification with the prescriptions in Subpart 2 of the Act, and the Court held that the implications for the eight-hour is that EPA could not ignore the entire section of Subpart 2 because EPA's discretion was limited there by Congress. So that portion of the case was necessary to the holding of that case. And what EPA is not telling you is that there is no gap in the statute for a nonattainment area with an attainment finding. The statute covers both, and if you look at the API decision, the Court there does go into the principle that Congress is assumed to know what exists, and therefore there is no gap there for EPA to fill. Under the new eight-hour rule, there is no exception for areas like the Bay Area that has an attainment finding that is still a nonattainment area. And lastly, Congress did say in 181b2a that design values determine attainment. Thank you, Your Honor. Thank you, counsel. The case just argued is submitted for decision. That concludes the Court's calendar for this morning, and the Court stands adjourned. All rise. This court is adjourned. This court is adjourned. This court is adjourned.
judges: Schroeder, McKeown, Duffy